IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-10-D

VIVIAN WADDELL, )
 )
            Plaintiff, )
 )
     v. )    **ORDER**
 )
U.S. BANK NATIONAL ASSOCIATION, )
 )
           Defendant. )

On December 3, 2018, Vivian Waddell ("Waddell" or "plaintiff"), on behalf of herself and others similarly situated, filed a complaint in Columbus County Superior Court against U.S. Bank National Association ("U.S. Bank" or "defendant") [D.E. 1-1].[1] On January 16, 2019, U.S. Bank removed the action to this court under the Class Action Fairness Act of 2005 [D.E. 1]. On February 15, 2019, U.S. Bank moved to dismiss Waddell's complaint [D.E. 20] and filed a memorandum in support [D.E. 21]. See Fed. R. Civ. P. 12(b)(6).

On March 7, 2019, Waddell filed an amended complaint. Essentially, Waddell claims that charging a service fee for an optional payment method (i.e., pay by phone) violates the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50 et seq., violates the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 et seq., and violates her deed of trust [D.E. 27]. On March 21, 2019, U.S. Bank moved to dismiss Waddell's amended complaint [D.E. 29] and filed a memorandum in support [D.E. 30]. On April 18, 2019, Waddell responded in opposition [D.E. 38]. On May 2, 2019, U.S. Bank replied [D.E. 41]. As

---

[1] Waddell incorrectly named U.S. Bank Home Mortgage as the defendant in her original and amended complaints. The proper defendant is U.S. Bank National Association.

explained below, the court denies as moot U.S. Bank's motion to dismiss the original complaint, grants U.S. Bank's motion to dismiss the amended complaint, and dismisses Waddell's amended complaint.

I.

On August 27, 2001, Waddell purchased a home in Riegelwood, North Carolina. See Am. Compl. [D.E. 27] ¶¶ 7, 9. Waddell financed the purchase through a loan from Firstar Bank secured by a deed of trust. See id. ¶ 9. U.S. Bank, "one of the nation's leading loan servicing companies," is a corporate subsidiary of U.S. Bancorp. Id. ¶ 8. U.S. Bank currently services Waddell's mortgage. See id. ¶¶ 7, 10.

Waddell could have mailed her monthly mortgage payments or paid on-line and incurred no transaction fee. See [D.E. 22-1, 22-3, 22-4, 31-1, 31-3, 31-4]. Waddell, however, regularly made monthly mortgage payments through U.S. Bank's pay-by-phone system, and U.S. Bank charges $11 per transaction to pay via a customer service representative and $5 per transaction to pay via the automated system. See [D.E. 27] ¶ 11; [D.E. 22-3] 3; [D.E. 22-4] 3; [D.E. 31-3] 3; [D.E. 31-4] 3. Waddell alleges that U.S. Bank "concealed the true cost of these transactions" from Waddell "and thereby made false and deceptive representations to her." Am. Compl. [D.E. 27] ¶ 14. Waddell also alleges that these pay-by-phone fees breach several provisions of her deed of trust. See id. ¶¶ 11, 15–21.

Waddell claims that, despite its actual processing costs being "likely less than $1.00," U.S. Bank has collected $1.6 million in pay-to-pay transaction fees from over one hundred thousand transactions during the last four years. Id. ¶¶ 1–2. Waddell purports to bring her claims on behalf of the following putative class:

All persons with a North Carolina address to whom [U.S.] Bank and its agents

2

charged, collected, or attempted to collect fees for the use of debit card or debit automatic clearing house ("ACH") mortgage payments during the applicable statutes of limitations for [Waddell's] claims through the date a class is certified.

Id. ¶ 24. Waddell seeks class certification, damages, and other forms of relief. See id. at 10.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263,

268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The motion to dismiss requires the court to consider Waddell's state law claims, and the parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir.

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

4

2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

As for Waddell's NCDCA claim, "[t]he NCDCA prohibits debt collectors from engaging in unfair debt collection practices, including the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations to the consumer, or other unconscionable means." Ross v. FDIC, 625 F.3d 808, 817 (4th Cir. 2010); see N.C. Gen. Stat. §§ 75-50–75-56. An NCDCA claim has three threshold requirements. See Davis Lake Cmty. Ass'n v. Feldmann, 138 N.C. App. 292, 295, 530 S.E.2d 865, 868 (2000); Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000). First, the "obligation owed must be a 'debt;' second, the one owing the obligation must be a 'consumer;' and third, the one trying to collect the obligation must be a 'debt collector.'" Reid, 138 N.C. App. at 263, 531 S.E.2d at 233; see Glenn v. FNF Servicing, Inc., No. 5:12-CV-703-D, 2013 WL 4095524, at *3 (E.D.N.C. Aug. 13, 2013) (unpublished).

If a plaintiff meets these threshold requirements, a plaintiff must establish the elements of a UDTPA claim: (1) an unfair or deceptive act (2) in or affecting commerce (3) proximately causing injury. See Ross, 625 F.3d at 817; Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644, 649 (E.D.N.C. 2014); Feldmann, 138 N.C. App. at 296, 530 S.E.2d at 868; Reid, 138 N.C. App. at 266, 531 S.E.2d at 235. An act "is unfair when it offends public policy and when [it] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Branch Banking & Tr. Co., 133 N.C. App. 580, 583, 515 S.E.2d 727, 729 (1999) (quotation omitted); see Fritz v. Duke Energy Carolinas, LLC, No. 5:13-CV-724-D, 2014 WL 3721373, at *3 (E.D.N.C. July 24, 2014) (unpublished).

5

Whether a debt collector's charge of a service fee for an optional payment method (such as pay-by-phone) violates the NCDCA is an issue of first impression under North Carolina law. Other plaintiffs have asserted similar claims under the Fair Debt Collection Practices Act ("FDCPA"). See, e.g., Robinson v. Enhanced Recovery Co., No. 18-441, 2019 WL 2423142, at *1–2 (E.D. Pa. June 10, 2019) (unpublished); Roe v. Totleca Enters., Inc., No. 617cv42, 2018 WL 1900532, at *4–6 (E.D. Tex. Apr. 20, 2018) (unpublished); Simmet v. Collection Consultants of Cal., No. CV 16-2273-BRO, 2016 WL 11002359, at *4–6 (C.D. Cal. July 7, 2016) (unpublished) (collecting cases); Liable v. Rockport Fin., LLC, No. 4:15-CV-306-ERW, 2015 WL 4771664, at *1–3 (E.D. Mo. Aug. 12, 2015) (unpublished). In relevant part, the FDCPA prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). In interpreting parallel NCDCA provisions, North Carolina courts look to decisions interpreting the FDCPA as persuasive authority. See Reid, 138 N.C. App. at 263–64, 531 S.E.2d at 233–34.

The NCDCA prohibits debt collection by "unconscionable means," including "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered [and] collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." N.C. Gen. Stat. § 75-55(2). The NCDCA also prohibits debt collection by "deceptive representation." Id. § 75-54. A defendant makes a deceptive representation if "the act complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Forsyth Mem'l Hosp., Inc. v. Contreras, 107 N.C. App. 611, 614, 421 S.E.2d 167, 170 (1992) (quotation omitted). A plaintiff "need not show deliberate acts of deceit or bad faith." Wilkes Nat'l Bank v. Halvorsen, 126 N.C. App. 179,

6

183, 484 S.E.2d 582, 585 (1997) (quotation omitted). Deceptive representations include "[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; falsely representing that the collector is in any way connected with any agency of the federal, State or local government; or falsely representing the creditor's rights or intentions." Id. § 75-54(4). Deceptive representations also include "[f]alsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges." N.C. Gen. Stat. § 75-54(6). Section 75-54(7) prohibits debt collectors from "[f]alsely representing the status or true nature of the services rendered by the debt collector or his business." N.C. Gen. Stat. § 75-54(7).

As for Waddell's section 75-54(4) claim, Waddell does not allege that U.S. Bank's pay-by-phone fees relate to a legal proceeding; therefore, any claim under the first clause in section 75-54(4) fails. See, e.g., Crabtree v. Smith, 797 S.E.2d 710, 2017 WL 1276069, at *4 (N.C. Ct. App. 2017) (unpublished table decision); In re Kennedy, No. 17-03101-5-JNC, 2019 WL 2366419, at *8 (E.D.N.C. Bankr. May 3, 2019) (unpublished); Key v. Dirty S. Custom Sound & Wheels, No. 5:09-CV-32-D, 2009 U.S. Dist. LEXIS 46907, at *4 (E.D.N.C. June 3, 2009) (unpublished). Likewise, U.S. Bank did not represent that it was in any way connected with a government agency and did not misrepresent its rights or intentions as a creditor. See [D.E. 22-3] 3; [D.E. 22-4] 3; [D.E. 31-3] 3; [D.E. 31-4] 3; cf. Meintzinger v. Sortis Holdings, Inc., No. 18-cv-2042 (BMC), 2019 WL 1471338, at *3 (E.D.N.Y. Apr. 3, 2019) (unpublished). Indeed, federal law authorized U.S. Bank to charge non-interest fees such as a pay-by-phone fee for this optional payment method. See 12 C.F.R. § 7.4002(a), (b)(2); Gutierrez v. Wells Fargo Bank, NA, 704 F.3d 712, 724 (9th Cir. 2012); Baptista v. JPMorgan Chase Bank, N.A., 640 F.3d 1194, 1196–97 (11th Cir. 2011); Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274, 280–81 (6th Cir. 2009); Murphy v. Nat'l City Bank, 560 F.3d

530, 532 n.3 (6th Cir. 2009); Wells Fargo Bank of Tex. N.A. v. James, 321 F.3d 488, 491–95 (5th Cir. 2003); Bank of Am. v. City & Cty. of San Francisco, 309 F.3d 551, 562–66 (9th Cir. 2002). Thus, the court dismisses Waddell's section 75-54(4) claim.

As for Waddell's section 75-54(6) claim, charging a service fee for paying by phone does not plausibly constitute a false representation that U.S. Bank could increase Waddell's existing obligation. See [D.E. 22-3] 3; [D.E. 22-4] 3; [D.E. 31-3] 3; [D.E. 31-4] 3. Accordingly, the court dismisses Waddell's section 75-54(6) claim.

As for Waddell's section 75-54(7) claim, Waddell does not plausibly allege that U.S. Bank falsely represented the status or true nature of its services. See [D.E. 22-3] 3; [D.E. 22-4] 3; [D.E. 31-3] 3; [D.E. 31-4] 3. Accordingly, the court dismisses Waddell's section 75-54(7) claim.

As for any claim that Waddell purports to allege under the remaining subsections of section 75-54, the remaining subsections are not relevant to Waddell's allegations. Thus, the court dismisses any such claim.

As for Waddell's section 75-55(2) claim, section 75-55(2) prohibits service fees only when a debt collector is not legally entitled to such fees. As mentioned, national banks (such as U.S. Bank) are legally entitled under federal law to charge non-interest fees such as the pay-by-phone fee at issue in this case. See 12 C.F.R. § 7.4002(a), (b)(2). Thus, the court dismisses Waddell's section 75-55(2) claim. Accordingly, because Waddell does not plausibly allege that U.S. Bank's pay-by-phone fee violates the NCDCA, the court grants U.S. Bank's motion to dismiss Waddell's NCDCA claim.

B.

As for Waddell's UDTPA claim, the UDTPA creates a cause of action for consumers injured by "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a); see

Dalton v. Camp, 353 N.C. 647, 655–56, 548 S.E.2d 704, 710 (2001). "A plaintiff bears the burden of proof on a claim of unfair and deceptive practice." Stott v. Nationwide Mut. Ins. Co., 183 N.C. App. 46, 54, 643 S.E.2d 653, 658 (2007).

To state a claim under the UDTPA, a plaintiff must plausibly allege that "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton, 353 N.C. at 656, 548 S.E.2d at 711; see Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). Whether an act or practice is unfair or deceptive is a question of law for the court. See Gray, 352 N.C. at 68, 529 S.E.2d at 681; CDI Corp. v. HCL Am., Inc., No. 5:17-CV-550-D, 2019 WL 1083775, at *5 (E.D.N.C. Mar. 7, 2019) (unpublished). A practice is deceptive "if it has the tendency to deceive." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A practice is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." Marshall, 302 N.C. at 548, 276 S.E.2d at 403.

A "mere breach of contract, even if intentional, is not an unfair or deceptive act" by itself. Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006); see PCS Phospate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Gray, 352 N.C. at 75, 529 S.E.2d at 685; Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). North Carolina law "does not permit a party to transmute a breach of contract claim into a . . . UDTPA claim . . . because awarding punitive or treble damages would destroy the parties' bargain." PCS Phosphate, 559 F.3d at 224; see Broussard v. Meineke Discount Muffler Shops, Inc.,

9

155 F.3d 331, 347 (4th Cir. 1998) (collecting cases). If substantial aggravating circumstances accompany a breach of contract, then those circumstances can give rise to a UDTPA claim. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981); Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700.

To the extent that Waddell seeks to transform her breach of contract claim into an UDTPA claim, see Am. Compl. [D.E. 27] ¶ 44, she cannot do so absent substantial aggravating circumstances. Waddell has not plausibly alleged substantial aggravating circumstances. Thus, her UDTPA claim fails to the extent she predicates it on a breach of the deed of trust.

The NCDCA "exclusively constitute[s] the unfair or deceptive acts or practices proscribed by [the UDTPA]" in debt collection matters. N.C. Gen. Stat. § 75-56(a). In other words, the NCDCA "supplants the UDTPA" in the debt collection context. Hester v. Dish Network, LLC, No. 7:14-CV-282-D, 2016 WL 4595690, at *5 n.3 (E.D.N.C. Sept. 2, 2016) (unpublished); see Musenge v. SmartWay of the Carolinas, LLC, No. 3:15-cv-153-RJC-DCK, 2018 WL 4440718, at *5 (W.D.N.C. Sept. 17, 2018) (unpublished); Ross v. Washington Mut. Bank, 566 F. Supp. 2d 468, 479 (E.D.N.C. 2008), aff'd sub nom., Ross v. FDIC, 625 F.3d 808 (4th Cir. 2010); DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 765 (M.D.N.C. 2003). Because Waddell's NCDCA claim fails, her UDTPA claim fails.

Alternatively, U.S. Bank's practice of charging customers a fee for paying by phone is not unfair or deceptive under the UDTPA. U.S. Bank's fee for an optional service that Waddell chose for her convenience is not plausibly deceptive (i.e., capable of or tending to deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers). Cf. Messina

v. Green Tree Servicing, LLC, 210 F. Supp. 3d 992, 999, 1005–06 (N.D. Ill. 2016). Accordingly, the court grants U.S. Bank's motion to dismiss Waddell's UDTPA claim.

C.

As for Waddell's breach of contract claim, under North Carolina law, Waddell must plausibly allege (1) the existence of a valid contract and (2) a breach of the terms of the contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Cater v. Barker, 172 N.C. App. 441, 445, 617 S.E.2d 113, 116 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). A breach of contract occurs when there is "non-performance, unless the person charged shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 517 (E.D.N.C. 2016) (alterations and quotations omitted), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished); see Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 572 (E.D.N.C. 2019); Cater, 172 N.C. App. at 447, 617 S.E.2d at 117. Courts interpret deeds of trust like contracts under North Carolina law. See, e.g., In re Rutledge, 510 B.R. 491, 500 (Bankr. M.D.N.C. 2014).

Waddell's deed of trust does not expressly address whether U.S. Bank can charge a service fee for an optional payment method (such as pay-by-phone), while providing other payment options that involve no fee. If the parties to the contract had intended to limit a party's right to charge a service fee for an optional payment method (such as pay-by-phone), "it would have been easy to" include such language in the contract. Carson v. Imperial '400' Nat'l Inc., 267 N.C. 229, 233, 147 S.E.2d 898, 901 (1966) (per curiam). The parties did not, and Waddell has not plausibly alleged that her deed of trust contains any express or implied terms that prohibit U.S. Bank from charging a service fee authorized by federal law for an optional payment method (such as pay-by-phone). Cf.

Maglione v. Aegis Family Health Ctrs., 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005). Accordingly, Waddell's breach of contract claims fails, and the court grants U.S. Bank's motion to dismiss Waddell's breach of contract claim.

### III.

In sum, the court DENIES as moot U.S. Bank's motion to dismiss the original complaint [D.E. 20], GRANTS U.S. Bank's motion to dismiss the amended complaint [D.E. 29], and DISMISSES without prejudice Waddell's amended complaint.

SO ORDERED. This 29 day of July 2019.

JAMES C. DEVER III
United States District Judge